UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO.

AIR METHODS CORPORATION and ROCKY
MOUNTAIN HOLDINGS LLC,

    Plaintiffs,

vs.

DAVID ALTMAIER, in his official capacity as Commissioner
of the Office of Insurance Regulation,

    Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Air Methods Corporation ("Air Methods") and its wholly-owned subsidiary Rocky Mountain Holdings, LLC ("Rocky Mountain") (collectively, "Air Methods"), by and through their undersigned attorneys, bring this civil action for declaratory and injunctive relief and allege as follows:

1. This is an action to declare invalid and to permanently enjoin the enforcement of Florida House Bill 747, enacted on September 18, 2020, codified at new Florida Statutes sections 627.42397 and 641.514 ("HB 747"). The new law is unconstitutional and preempted by federal law, namely the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b).

2. Congress included an express preemption clause in the ADA that prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b).

3. Air Methods is an "air carrier" for purposes of the ADA because it is certified to provide interstate air transportation. *See* 49 U.S.C. § 40102(a)(2); *see also Stout v. Med-Trans Corp.,* 313 F. Supp. 3d 1289, 1294-95 (N.D. Fla. 2018).

4. The ADA prohibits state laws that regulate an air carrier's pricing, even when the state law purports to apply only to transports within the state. *See Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1060-61 (10th Cir. 2019).

5. Despite the ADA's well-established prohibition, HB 747 seeks to regulate the prices set by air ambulance service operators in the State of Florida ("State") in two ways: first, by limiting reimbursement from health insurers based on select criteria; and second, by prohibiting any "balance billing" to patients for any amount over the reimbursement rate established under the statute.

6. Because HB 747 seeks to regulate pricing for air ambulance services, there can be no question that HB 747 is preempted by the ADA, even if the new law is described and rationalized as an effort to regulate the business of insurance.

7. Moreover, the new law is unconstitutionally vague as enforcement of a "reasonable reimbursement" rate will be at the whim of the insurers, who merely

2

"consider" certain factors but are not bound by any standards in determining the reimbursement rate.

8. Additionally, the federal government is currently working with both health insurers and air ambulance service providers to address pricing and balance billing issues in the air ambulance industry on a nationwide basis. The FAA Reauthorization Act of 2018 established an Air Ambulance and Patient Billing ("AAPB") Advisory Committee that already has provided a report to the U.S. Department of Transportation ("DOT") this year for purposes of issuing national guidance and rules in order to prevent the application of inconsistent state laws like HB 747.

9. At bottom, HB 747 manifestly regulates the pricing of air ambulance operators in Florida in explicit violation of the ADA, and must be declared unconstitutional and invalid.

**JURISDICTION AND VENUE**

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under (i) the Supremacy Clause of the Constitution of the United States, Article VI, clause 2 ("the Supremacy Clause"); and (ii) the laws of the United States, specifically the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1). Additionally, subject matter jurisdiction arises under 28 U.S.C. § 1337, because the matter in controversy arises under an Act of Congress

regulating commerce, *i.e.*, the ADA, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because this is an actual controversy in which Plaintiffs seek declaratory relief.

11. Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b) because Defendant performs his official duties and transacts his affairs in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

12. Air Methods, operating through its subsidiary Rocky Mountain, provides life-saving, emergency transport to critically injured patients in many states throughout the country, including the State of Florida.

13. Air Methods is certified by the Federal Aviation Administration ("FAA") as an on-demand air carrier that is subject to pervasive federal regulation.

14. Air Methods employs medical professionals and flight crews, owns and operates air medical service helicopters, and maintains all required state and local licensure and insurance that enables it to provide life-saving transportation services to those in need.

15. Defendant David Altmaier, the Commissioner of the Florida Office of Insurance Regulation ("OIR"), is sued in his official capacity. The Commissioner's

office is charged with enforcing the law at issue. *See* Fla. Stat. § 20.121(3)(a)1. His office is located at 200 East Gaines Street, Tallahassee, Florida 32399.

## FACTUAL BACKGROUND

**A.     Air Methods' Life-Savings Operations in Florida**

16.    Air Methods is a federally regulated air carrier that provides life-saving emergency air transportation services to critically ill and injured patients.

17.    Air Methods provides these emergency air ambulance services throughout the State of Florida to destinations in Florida and across state lines into neighboring states.

18.    Air Methods has 14 different bases located across Florida: from Escambia County in the Panhandle to Jacksonville in Northeast Florida to St. Lucie in Southeast Florida to Lee County in Southwest Florida.

19.    Air Methods operates on average one or two emergency air transports on a daily basis from each one of these 14 locations.

20.    Air Methods also serves several under-served rural communities, and transports patients from these rural communities to higher care facilities located in metro areas of Florida.

21.    Air Methods is authorized by the FAA to operate as a Part 135 air carrier providing on-demand air ambulance services.

22. Air Methods also is registered with the DOT to operate as a Part 298 air taxi operator providing on-demand services.

23. Pursuant to its Part 135 certificate and Part 298 registration, Air Methods is authorized to operate interstate flights and, as a common carrier for compensation, qualifies as an "air carrier" as that term is defined in the ADA.

24. Air Methods maintains a fleet of air ambulances, fixed wing aircraft and helicopters, that are prepared to respond at a moment's notice to medical emergencies. It provides life-saving emergent air ambulance transportation to critically ill or injured patients, while medical professionals provide in-flight care.

25. Air Methods is dispatched by first responders at the scene of an accident or by a physician or medical facility that determines a patient requires emergency transport to a hospital that can offer a higher level of care.

26. In accordance with federal and state law, Air Methods serves patients in its aircraft regardless of their insurance status or their ability to pay for the services.

27. To continue to provide air ambulance service to every patient regardless of their ability to pay, Air Methods must receive its billed charges for a sufficient proportion of its flights to offset the losses it suffers when it transports patients who are uninsured, underinsured or are covered by Medicare or Medicaid.

**B.     Florida House Bill 747**

28.    On November 22, 2019, HB 747 was introduced as a bill in the Florida House of Representatives.  The purpose of HB 747 is to regulate the prices air ambulance service providers can receive in the State of Florida from its patients and their health insurers.

29.    On March 12, 2020, the Florida Legislature passed HB 747.

30.    On September 18, 2020, the Governor of Florida signed HB 747 and the law took effect immediately.

31.    Under HB 747, Florida Statutes are amended to limit the prices that air ambulance operators can receive for their transportation services from their patients' health insurers.  By definition, the reimbursement required under the statute must be something less than the air ambulance service provider's billed charges.

32.    HB 747 accomplishes this impact by mandating that health insurers provide "reasonable reimbursement" to an air ambulance service for covered nonemergency and emergency services provided to an insured in accordance with the coverage terms of the policy.  Air ambulance operators are forced to accept this vague and lower reimbursement rate, which is expressly not based upon air ambulance operators' billed charges.

33.    Additionally, the air ambulance operators must accept any "payment by the insured of his or her applicable copayment, coinsurance, or deductible constitutes

7

an accord and satisfaction of, and constitutes a release of, any claim for additional moneys owed by the insured to the health insurer or to any person or entity in connection with the air ambulance service." Fla. Stat. § 627.42397(1)(c)(2).

34. The enforcement of HB 747 will likely result in significant economic losses to Air Methods. These losses will be immediate as Air Methods operates daily life-saving flights. Indeed, the Florida legislators fully recognize that HB 747 will have a "negative, indeterminate fiscal impact" on air ambulance service providers.[1]

35. Moreover, because Air Methods cannot balance bill the patient under the new law, the law will cap all reimbursement well below the prices set by Air Methods.

36. Even more concerning is that Air Methods will be forced to evaluate the ongoing financial viability of operations in the State as a result of the anticipated significant loss of revenue under HB 747. Indeed, the new law leaves little, or no, incentive for insurers to negotiate in good faith with Air Methods regarding in-network rates.

---

[1] *See* House of Representatives Staff Final Bill Analysis for HB 747 ("House Report") (2020), at 6, *available at* https://www.flsenate.gov/Session/Bill/2020/747/Analyses/h0747z.HMR.PDF.

**D.     The Airline Deregulation Act**

37.     In 1978, Congress amended the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et. seq.*, and enacted the ADA with the intention of deregulating the aviation industry.

38.     Congress included an express preemption clause in the ADA that prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

39.     This express preemption clause was included "to ensure that States would not undo federal deregulation with regulation of their own," *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992), and to "prevent conflicts and inconsistent regulations" of air carriers by the federal government and the 50 states. H.R. Rep. No. 95-1211, at 16 (1978).

40.     In passing the ADA, Congress determined that "an air transportation system relying on actual and potential competition" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality . . . of air transportation services." 49 U.S.C. § 40101(a)(12).

41.     Congress also recognized that it is in the public interest to place "maximum reliance on competitive market forces and on actual and potential competition − (A) to provide the needed air transportation system; and (B) to

9

encourage efficient and well-managed carriers to earn adequate profits and attract capital." 49 U.S.C. § 40101(a)(6).

42. The ADA's preemption clause is interpreted broadly, and preemption is found where claims, directly or indirectly, have "a connection with, or reference to" an air carrier's prices, routes or services. *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 280-81 (2014); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).[2]

43. HB 747's ill-conceived pricing scheme is federally preempted by the ADA for the same reasons as those found by the U.S. Court of Appeals for the Eleventh Circuit in *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1271 (11th Cir. 2018) (finding ADA preemption because "the balance billing provision has 'the forbidden significant effect' on the prices of an air carrier"), and several other federal court decisions. *See EagleMed LLC v. Cox*, 868 F.3d 893, 905 (10th Cir. 2017) (holding fee schedules in workers compensation act were preempted because they regulated air ambulances' prices); *Guardian Flight, LLC v. Godfread*, 359 F. Supp. 3d 744, 755 (D.N.D. 2019) (finding ADA preempted state law setting

---

[2] To the extent the Commissioner asserts reverse preemption under the McCarran-Ferguson Act, it is clear that HB 747 regulates the activities of an air ambulance operator by setting the price for the services and including a balance billing prohibition, and is therefore not limited to the relationship between the insured and the insurer.

state-mandated rate and prohibition on balance billing because interfered with air ambulance prices), *appeal docketed*, No. 19-1381 (8th Cir. Feb. 25, 2019); *Air Evac EMS, Inc. v. Cheatham*, 260 F. Supp. 3d 628, 633 (S.D. W. Va. 2017) (holding ADA preempted West Virginia law prohibiting air ambulance companies from balance billing patients insured by West Virginia's Public Employees Insurance Agency), *aff'd,* 910 F.3d 751 (4th Cir. 2018); *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 943 (D.N.D. 2016) (holding ADA preempts North Dakota workers' compensation fee schedule and balance billing prohibitions).

44. The House Report for HB 747 and the Senate Report regarding the sister Senate Bill (SB 736) expressly recognize the foregoing cases, including the Eleventh Circuit *Bailey* decision, and the various states' repeated failed efforts to enact new laws or enforce state fee schedules in an attempt to cap or restrict air ambulance prices.[3]  Additionally, the Senate Report predicted that the new law will be struck down given the breadth of the ADA's prohibition of state regulation of air carrier prices.[4]

---

[3] *See* House Report, at 3-4; Senate Bill Analysis and Fiscal Impact Statement for SB 736 (the sister bill to HB 747) ("Senate Report"), at 7-8 (2020), *available at* https://www.flsenate.gov/Session/Bill/2020/736/Analyses/2020s00736.rc.PDF

[4] *See* Senate Report, at 11 (recognizing ADA preemption as one of the "Technical Deficiencies" with the new law).

45. The DOT's Office of the General Counsel also has reinforced an expansive view of preemption and reliance on market forces, specifically in the air ambulance context. In its *Guidelines for the Use and Availability of Helicopter Emergency Medical Transport (HEMS)*,[5] the Office of the General Counsel summarizes its various opinions on FAA and ADA preemption in air ambulance cases. In discussing federal preemption of state laws that require certificates of authority to operate in the state, the Office notably confirmed that:

> [o]nce the Secretary [of Transportation] certificates an air ambulance operator, *the competitive marketplace, rather than state regulations*, controls the operator's prices, routes, and services, and only the Secretary may revoke an air ambulance operator's certificate.

*Id*. at 11 (emphasis added).

### E. The FAA Reauthorization Act of 2018

46. The FAA Reauthorization Act established an Air Ambulance and Patient Billing ("AAPB") Advisory Committee, comprised of health insurers and air ambulance operators, to review ways to improve the disclosure of air ambulance charges, better inform consumers of insurance options, and protect them from balance billing. Pub. L. No. 115-254, § 418, 132 Stat. 3186, 3334-3336 (2018).

---

[5] *Available at* https://www.transportation.gov/sites/dot.gov/files/docs/Guidelines%20for%20the%20Use%20and%20Availability%20of%20Helicopter%20Emergency%20Medical%20Transport%20%28HEMS%29%20OCR.pdf

47. The AAPB met earlier this year and issued a report, which the DOT is presently using to conduct oversight of air ambulance service providers and to issue forthcoming guidance concerning provider pricing and billing practices. This will include guidance for States to refer such matters to the Secretary of Transportation. Pub. L. No. 115-254, § 420, 132 Stat. 3336.

48. DOT has plenary authority to investigate allegedly unfair business practices of air ambulance operators, including complaints concerning prices and balance billing, and bring enforcement actions. *See* 49 U.S.C. § 41712(a). DOT reviews consumer complaints to determine compliance with federal law and identify areas of concern that serve as the basis for *federal* rulemaking and legislation.

**Count I: Declaratory Judgment that HB 747 Is Preempted By the ADA and Injunctive Relief to Enjoin Its Enforcement**

49. Plaintiffs repeat and reallege paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. HB 747 is preempted by the ADA because it "relates to" the prices and services provided by air ambulance service providers in Florida, including Air Methods.

51. Specifically, HB 747 directly affects the prices that air ambulance operators may charge because the operator will be required to accept the prices mandated by the statute, which by definition will be less than the billed charges of the operator.

52. Air Methods, if unable to set its air carrier rates to sustain its operations in the State, will likely be forced to cease its critical life-saving operations in many counties, including the rural communities in Florida, with such cessation at the expense of the life and health of Florida's citizens.

53. Because HB 747 (i) authorizes health insurers to determine Air Methods' prices by setting reimbursement rates and prohibiting balance billing, and (ii) threatens Air Methods' ability to continue to provide services to the Florida emergency air transport market, the statute is preempted by the ADA and this Court should declare HB 747 invalid and unenforceable.

**Count II: Declaratory Judgment that HB 747 Violates the Supremacy Clause of the U.S. Constitution and Injunctive Relief to Enjoin Its Enforcement**

54. Plaintiffs repeat and reallege paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. Pursuant to Article VI, Section 2 of the U.S. Constitution (the Supremacy Clause), any state statute, rule or regulation that conflicts with federal law is preempted.

56. Specifically, HB 747 is unconstitutional and conflicts with the ADA, which prohibits states from enacting or enforcing laws that relate to prices, routes or services of air carriers such as Air Methods.

57. Additionally, HB 747 conflicts with the FAA Reauthorization Act, which specifically designates the DOT to oversee and issue guidance and rules on pricing and balance billing practices in the air ambulance industry.

58. Accordingly, this Court should declare that the provisions of HB 747 are invalid and unenforceable because they violate the Supremacy Clause of the U.S. Constitution, Article VI.

### Count III:  Declaratory Judgment that HB 747 Is Unconstitutionally Vague and Injunctive Relief to Enjoin Its Enforcement

59. Plaintiffs repeat and reallege paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60. HB 747 is unconstitutionally vague in not defining "reasonable reimbursement," therefore leaving Plaintiffs as air ambulance providers uncertain what they will be reimbursed for their services.

61. While the new statutes list factors that may be considered in creating the "reasonable rates," it is unclear how the health insurer will weigh or calculate these factors.  Essentially, the new law leaves the insurer with *carte blanche* in setting the reimbursement rate.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

(1) Issue a declaratory judgment that declares HB 747 invalid and unenforceable as preempted by the Constitution and laws of the United States;

15

(2)  Issue a preliminary injunction, the same to be made permanent on final judgment:

(a) Restraining and enjoining defendant, his employees, or agents from enforcing or seeking to enforce the provisions of HB 747 determined by this Court to be invalid and preempted by federal law; and

(b) Requiring defendant to issue such notices, and take such steps as shall be necessary and appropriate to carry into effect the substance and intent of paragraph (a) above, including but not limited to the requirement that defendant publicly withdraw, and rescind any orders that seek to enforce, the provisions of HB 747 herein determined by this Court to be preempted by federal law; and

(3)  Grant such other further or different relief as to which the Plaintiffs may be entitled.[6]

Dated: September 24, 2020

HOLLAND & KNIGHT LLP
Attorneys for Plaintiffs

*/s/ Tiffany A. Roddenberry*
Tiffany A. Roddenberry
Florida Bar No. 92524
Email: tiffany.roddenberry@hklaw.com
315 South Calhoun Street, Suite 600
Tallahassee, FL 32301
Tel: (850) 425-5658

*/s/ Judith R. Nemsick*
Judith R. Nemsick
(*pro hac vice forthcoming*)
Email: judy.nemsick@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200

---

[6] Air Methods reserves the right to amend this complaint or file a separate action against insurers who restrict payments in reliance upon this preempted state law.

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 88536
Email: phil.rothschild@hklaw.com
515 East Las Olas Boulevard, 12th Floor
Fort Lauderdale, FL 33302-4070
Tel:   (954) 525-1000