## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

AIR METHODS CORPORATION AND
ROCKY MOUNTAIN HOLDINGS LLC,

     Plaintiffs,

v.                               Case No. 4:20-cv-462-AW-MAF

DAVID ALTMAIER, in his official
capacity as Commissioner of the
Office of Insurance Regulation,

     Defendant.

_____/

## DEFENDANT COMMISSIONER ALTMAIER'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND INCORPORATED MEMORANDUM OF LAW

Defendant David Altmaier, in his official capacity as Commissioner of the Office of Insurance Regulation ("Commissioner"), pursuant to Federal Rule of Civil Procedure 12(b)(1), hereby moves for an order dismissing Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint"). Doc. 33. For the reasons set forth below, the Amended Complaint should be dismissed for lack of Article III jurisdiction.

**Introduction and Background**

At issue in this case is Florida House Bill 747, passed by the Legislature during the 2020 legislative session.  It was later enacted as chapter 2020-177, Laws of Florida, on September 18, 2020, and is now codified at sections 627.42397 and 641.514, Florida Statutes ("HB 747").[1]  HB 747 was enacted to address the high cost of air ambulance services while minimizing insurer disputes with air ambulance providers, and to ensure that insureds continue to have ready access to air ambulance services.[2]

HB 747 requires that health insurance policies and contracts with health maintenance organizations ("HMOs") to include language stating that insurers and HMOs must provide "reasonable reimbursement" to air ambulance services for covered nonemergency and emergency services. HB 747, §§ 1(2), 2(2) (2020). "Reasonable reimbursement" is defined as:

> reimbursement that considers the direct cost to provide the air
> ambulance transportation service to the subscriber, the operation of an
> air ambulance service by a county which operates entirely within a
> designated area of critical state concern as determined by the

---

[1] The bill that was actually passed was Committee Substitute for Committee Substitute for House Bill 747 (CS/CS/HB 747), but HB 747 is used herein for ease of reference.

[2] Fla. H.R. Comm. on HHS, CS/CS/HB 747 (2020) Staff Analysis (final Sept. 22, 2020) at 2-3, 5 (on file with comm.), https://www.myfloridahouse.gov/Sections/Documents/ loaddoc.aspx?FileName=h0747z1.HMR.DOCX&DocumentType=Analysis&BillN umber=0747&Session=2020 (hereinafter "Staff Analysis").

> Department of Economic Opportunity, and in-network reimbursement established by the health maintenance organization for the specific contract. The term does not include the amount of billed charges for the cost of services rendered.

*Id.*  HB 747 further states that "[p]ayment in full by the insured of his or her applicable copayment, coinsurance, or deductible constitutes an accord and satisfaction of, and constitutes a release of, any claim for additional moneys owed by the insured to the health insurer or to any person or entity in connection with the air ambulance service." *Id.*[3]

Plaintiffs, Air Methods Corporation, and its wholly-owned subsidiary, Rocky Mountain Holdings, LLC ("AMC"),[4] filed an initial complaint is action just days after the law became effective. Doc. 1.  On March 24, 2021, the Court dismissed the initial complaint, without prejudice, on standing grounds, finding that AMC's causes of action were not ripe and that the alleged injuries were neither traceable to the Commissioner nor were likely to be redressed by a favorable judgment against the Commissioner. Doc. 30.  The Amended Complaint timely followed.

---

[3] The legislation at issue in this case applies to both  to health insurance policies and HMO contracts.  The provisions of that law at issue here are identical, so for convenience, the term "insurer" will collectively refer to both health insurers and HMOs.  Likewise, the term "insured" will collectively refer to insureds under a health insurance policy or subscribers to an HMO contract.

[4] For convenience, Plaintiffs will be referred to collectively as AMC.

While the Commissioner's motion to dismiss, Doc. 13, was pending, Congress passed the Consolidated Appropriations Act, 2021. Pub. L. No. 116-260, 134 Stat. 1182 (2020). Included in this act is the "No Surprises Act." *Id.* at Div. BB, Title I §§ 101-118. Section 105 of the No Surprises Act is titled "Ending Surprise Air Ambulance Bills," and becomes effective January 1, 2022.[5] Section 105 creates section 2799A-2 to part D of title 19 XXVII of the Public Health Service Act (42 U.S.C. 300gg, et seq.). Section 2799A-2 will require insurers to make payment, or issue a denial of payment, to out-of-network providers of air ambulance services within 30 days of receiving a bill. § 2799A-2(a)(3). The amount of payment is to be determined pursuant to section 2799A-1(a)(3)(K).[6] That section defines the out-of-network payment rate as either (1) the amount determined according to state law in a state that has a specific law governing out-of-network rates; (2) the amount negotiated by the provider and insurer, either directly or through a dispute resolution process; or (3) an amount approved by the state in a state that has an All-Payor Model Agreement under section 1115A of the Social Security Act. § 2799A-1(a)(3)(K).

Should an air ambulance service provider be dissatisfied with the amount tendered by an insurer, the provider or the insurer initiate a dispute resolution process. § 2799A-2(b). This process begins with a 30-day open negotiation period.

---

[5] § 105(a)(4). Sections 101 – 118 comprise the "No Surprises Act."

[6] Section 2799A-1 is created by section 102(a)(1) of the No Surprises Act.

§ 2799A-2(b)(1)(A).  Should those negotiations fail, the insurer or provider may then access a formal dispute resolution process. § 2799A-2(b)(1)(B).  Detailed provisions governing the establishment and operation of this process are included in the statute. § 2799A-2(b)(2)-(9).

Section 105 also contains a provision that prohibits balance billing by air ambulance service providers stating that they "shall not bill, and shall not hold liable, such participant, beneficiary, or enrollee for a payment amount for such service furnished by such provider that is more than the cost-sharing amount[7] for such service. . . ." Pub. L. No. 116-260, § 105(a)(4).

In its Amended Complaint, AMC claims that HB 747 is preempted by the Airline Deregulation Act, 49 U.S.C. § 40101 (ADA), and that it violates the Supremacy Clause of the United States Constitution.  AMC seeks a declaratory judgment, as well as preliminary and final injunctive relief.  As was the case with its initial complaint, AMC fails to show that this Court has subject-matter jurisdiction over this matter.  The Court lacks subject-matter jurisdiction because AMC has no standing to sue the Commissioner in this case.  Accordingly, the Court should dismiss the Amended Complaint.

---

[7] Deductible and co-pay.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 12(b)(1) requires that a complaint be dismissed if a federal court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because Article III confers federal court jurisdiction only on cases or controversies, a federal court lacks subject matter jurisdiction over a complaint that fails to make plausible allegations of standing. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008).  Standing is a threshold matter that must be satisfied before a federal court may consider merits of a case. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 514 (11th Cir. 2005) (citing *Dillard v. Baldwin County Com'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000).  The party invoking federal jurisdiction bears the burden of establishing a court's Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy this standing burden, a plaintiff must minimally allege:  1) an injury-in-fact that is concrete, particularized, actual or imminent; 2) a causal connection between the injury and the challenged conduct (traceability); and 3) that the injury will likely be redressed by a favorable decision (redressability). *United States v. Hays*, 515 U.S. 737, 742-43 (1995), citing *Lujan,* 504 U.S. at 560-61.

The fact that AMC seeks declaratory and injunctive relief does not lessen its burden to establish jurisdiction. *See Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*,

68 F.3d 409, 414 (11th Cir. 1995).   Where this relief is sought, a plaintiff must, "…demonstrate that he is likely to suffer future injury; second, that he is likely to suffer such injury at the hands of the defendant; and third, that the relief the plaintiff seeks will likely prevent such injury from occurring." *Cone Corp. v. Florida Dept. of Transp.*, 921 F.2d 1190, 1203-04 (11th Cir. 1991).   A generalized grievance against alleged governmental conduct is insufficient and the Court cannot speculate on the facts needed to be alleged by a plaintiff to demonstrate standing. *See Hays*, 515 U.S. at 743-44; *Bochese*, 405 F.3d at 976.

## I.   AMC AGAIN FAILS TO DEMONSTRATE TRACEABILITY AND REDRESSABILITY

In its Amended Complaint, AMC still fails to establish that any injuries it may suffer are traceable to the Commissioner, or that the declaration and injunction it prays for against the Commissioner would redress those injuries.

As noted above, there are two main provision of HB 747.  The first states that health insurance policies and HMO contracts must include language requiring insurers to pay reasonable reimbursement for air ambulance services.  §§ 627.42397(2), 641.514(2), Fla. Stat.  Second, HB 747 provides that, once insured pay all applicable copays and deductibles, they are released from any liability to air ambulance providers for those services. *Id.*  With respect to traceability, the Court found, in its order dismissing the original complaint, that the responsibilities of the Commissioner under HB 747 are limited to ensuring that health insurance policies

and HMO contracts include reasonable reimbursement language. Doc. 30 at 4-5. The Court also noted that "Air Methods has alleged no harm from the requirement that insurers provide air-ambulance coverage. And how could it? It is surely no worse off with insurers forced to cover its services than with insurers who may or may not cover its services." *Id.* at 4. The Court also found that the Commissioner has no role to play with respect HB 747's balance-billing prohibition:

> But the Commissioner does not enforce this provision. As the parties acknowledged at the hearing, if Air Methods did balance bill a patient notwithstanding this provision, the Commissioner would be powerless to do anything about it. He could not stand in Air Methods's way or punish it after the fact. For this reason, any injury flowing from the no-balance-bill provision is not traceable to him, and any such injury is not redressable through him.

> *Id.* at 5.

These findings equally apply to the Amended Complaint. With respect to the reasonable reimbursement provision, AMC attempts to address traceability by alleging that "[b]y ensuring that these rate-setting terms are incorporated in every insurance policy, the Commissioner is causing harm to Air Methods through implementation of those terms, and therefore Air Methods (i) will never receive a reimbursement that is equal to its billed charges and (ii) since the law took effect, has consistently received reimbursements below the average payments received prior to the law's enactment." Doc. 33 at 12. By way of example, AMC claims that

in the aftermath of the passage of HB 747, its average first primary payment from one insurer dropped from $34,360 to $8,342. Doc. 33 at 12.

The problem with this allegation is that *the Commissioner has not begun enforcing HB 747.* Reasonable reimbursement language was not included in health insurance policies and HMO contracts for 2021. Declaration of John Reilly at para. 7. If AMC's allegation regarding insurance payments is accurate, it could not possibly have been caused by any action of the Commissioner, because the Commissioner has taken no action to enforce HB 747. AMC's injuries, if any, were caused by third parties who are not before this Court. If AMC has in fact been damaged by lower payments from insurers, the cause was the insurers themselves. The Commissioner has no role in setting or enforcing reimbursement rates paid by insurers pursuant to HB 747. Reilly Dec. at para. 6. Additionally, if reimbursement rates from insurers have, in fact, dropped following the passage of HB 747 without the Commissioner enforcing it, when and if the required language is included in insurance policies and HMO contracts, AMC will be unable to show that any damage caused by lower reimbursement rates would be traceable to the Commissioner.[8]

---

[8] Indeed, even if rates have not in fact already dropped, and they did so after the reasonable reimbursement provision started applying to insurers, AMC would be unable to establish traceability. The reasonable reimbursement provision merely requires insurers to "cover [AMC's] services." Doc. 30 at 4. If an insurer tried to wield the provision as an excuse to pay lower rates to AMC, AMC's dispute would

(Footnote Cont'd . . .)

Therefore, AMC's alleged past and future injuries in the form of lower reimbursement rates are not traceable to the Commissioner.

With respect to the balance-billing prohibition, the Amended Complaint contains no allegation tying that provision to the Commissioner.  AMC can only allege that "the 'reasonable reimbursement' provision results in lower payments to Air Methods, and the prohibition on 'balance billing' acts as a final cap on such payments."  Even if this were true, it does not change the fact that, as AMC has previously acknowledged, the Commissioner has no role to play in ensuring that providers do not balance-bill for air ambulance services. Doc. 30 at 5; Reilly Dec. at para. 11.  Further, to the extent that this allegation is an attempt to argue that the two provisions somehow work together, such an argument is a non-starter.  This is because, as the Court has previously found, [a] plaintiff must have standing for each claim he brings, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006), so an injury from one provision cannot provide standing to challenge another." *Id.*

For the same reasons that AMC has not demonstrated traceability to the Commissioner, the injuries alleged by AMC would not in any way be redressed by a judgment against the Commissioner.  Since AMC alleges that it has already been harmed by the implementation of HB 747 without any enforcement action by the

---

be with the insurer, not the Commissioner. The proper recourse for AMC would be to sue the insurer and contest its interpretation of the provision.

Commissioner, a declaration or injunction against the Commissioner cannot logically address the issue of lower payments from insurers. A declaration or injunction would have no effect on insurers as non-parties to the litigation. Insurers would continue to make what they consider reasonable reimbursement to AMC regardless of whether there were an injunction in place prohibiting the Commissioner from enforcing HB 747. And because, as the Court has previously acknowledged, the Commissioner does not enforce the balance billing prohibition, Doc. 30 at 5, a declaration or injunction against it would do nothing to preclude insureds from using the prohibition as a defense against payment demands from air ambulance providers.

The relief AMC seeks in this litigation must be obtained against insurers and insureds, not against the Commissioner. If AMC takes issue with a payment from an insurer, its remedy lies with that insurer, not the Commissioner, and nothing in HB 747 prevents AMC from taking such legal action. Reilly Dec. at para. 10. Likewise, AMC's issue with the balance billing prohibition must be resolved through litigation with insureds who do not pay what AMC demands. *See* Doc. 30 at 6 (finding that "an injunction against the Commissioner would not stop any insured from asserting rights under the no-balance-billing provision. As nonparties here, they would not be bound by this court's determination about the law's

validity." (citing *Lewis v. Governor of Ala.,* 944 F.3d 1287, 1303 (11th Cir. 2019));

*see also* Reilly Dec. at para. 11.

## II.    AMC'S CLAIMS WITH RESPECT TO THE NO SURPRISES ACT ARE NOT RIPE.

While AMC has included in its Amended Complaint new allegations

concerning specific harm it has suffered as a result of the enactment of HB 747, it

also alleges that HB 747 conflicts with the federal No Surprises Act, and as such

violates the Supremacy Clause.  This claim is not ripe and should be dismissed in

the event the Court does not dismiss the entire complaint on traceability and

redressability grounds.

"The purpose of the ripeness doctrine is to prevent the courts, through

avoidance of premature adjudication, from entangling themselves in abstract

disagreements." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995). The doctrine

requires a court to consider "whether there is sufficient injury to meet Article III's

requirement of a case or controversy and, if so, whether the claim is sufficiently

mature, and the issues sufficiently defined and concrete, to permit effective decision-

making by the court." *Elend v. Basham*, 471 F.3d 1199, 1210–11 (11th Cir. 2006)

(quotations omitted).

Any claim by AMC that it is entitled to declaratory and injunctive relief due

to an alleged conflict between HB 747 and the No Surprises Act is simply not ripe.

The pertinent provisions of the No Surprises Act are not due to go into effect until January 1, 2022. Pub. L. No. 116-260 §105(a)(4).  At this point, seven months before the effective date, any claims as to the effect of the No Surprises Act and its interplay with HB 747, as well as the ADA, would be mere speculation.  In any event, AMC fails to include any allegations concerning the nature of the purported conflict.  As noted above, the No Surprises Act includes a provision that may very well incorporate HB 747 into the calculation of out-of-network air ambulance rates. §2799A-2(a)(3)(B).[9]  Until the Act goes into effect, and likely for many months following the effective date, its actual impact cannot be determined.  Accordingly, any claims related to the No Surprises Act are not ripe and must be dismissed.

## CONCLUSION

As set forth above, AMC has not shown that it has standing to assert its claims in its Amended Complaint, and that its claims regarding the No Surprises Act are not ripe.  AMC has therefore not established that the Court has jurisdiction under Article III to adjudicate this matter.  Wherefore, because AMC has not established

---

[9] As discussed *supra* p. 4, the cited provision incorporates § 2799A-1(a)(3)(K) that defines an out-of-network payment rate, inter alia, as the rate determined by state law if the state has such a law.  If HB 747 is deemed to be qualifying state law, it would be incorporated into the No Surprises Act rather than being preempted by it. In addition, the balance billing prohibition in HB 747 is essentially identical to the prohibition contained in the No Surprises Act, and as such, a declaration that HB 747's prohibition is preempted would be a futile gesture at best.

Article III jurisdiction, Commissioner Altmaier respectfully requests that the Court enter an order dismissing AMC's Amended Complaint for lack of subject matter jurisdiction.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ William H. Stafford III*
WILLIAM H. STAFFORD III
Senior Assistant Attorney General
Florida Bar No. 70394

*/s/ Elizabeth Teegen*
ELIZABETH TEEGEN
Chief Assistant Attorney General
Florida Bar No. 833247
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Tel: 850-414-3300
william.stafford@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com

*Counsel for Commissioner Altmaier*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that the text of this motion, as calculated in accordance with the requirements under Local Rule 7.1 of the Northern District of Florida, contain 2923 words.

*/s/ William H. Stafford III*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2021, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will serve a copy via email on the following counsel of record:

Tiffany A. Roddenberry, Esq.
Holland & Knight LLP
315 South Calhoun Street, Suite 600
Tallahassee, FL 32301
tiffany.roddenberry@hklaw.com

Judith R. Nemsick, Esq.
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
judy.nemsick@hklaw.com

Philip E. Rothschild, Esq.
Holland & Knight LLP
515 East Las Olas Boulevard, 12th Floor
Fort Lauderdale, FL 33302-4070
philip.rothschild@hklaw.com

*/s/ William H. Stafford III*