## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS,

                                    Case No. 4:20-cv-00462-AW-MAF

          Plaintiffs,

vs.

DAVID ALTMAIER, in his official
capacity as Commissioner of the
Office of Insurance Regulation,

          Defendant.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs Air Methods Corporation and its wholly-owned subsidiary Rocky Mountain Holdings LLC (collectively, "Air Methods"), by and through their undersigned attorneys, respectfully oppose Defendant's motion to dismiss the amended complaint ("Motion") and state as follows.

## PRELIMINARY STATEMENT

This action involves a law enacted in September 2020 by the State of Florida to specifically address the prices that air ambulance providers receive for their services, in clear violation of the Supremacy Clause of the United States Constitution through the preemption doctrine. The express purpose of the law, HB 747, is to reduce the cost of such air ambulance services, thus resulting in lower prices paid to

air ambulance providers.  Am. Complaint, ¶¶ 5-6 [ECF No. 33].  The Amended

Complaint has now answered the Court's concern regarding the allegation of harm

from the reasonable reimbursement language in HB 747–language that is clearly

unconstitutional as federal law forbids states from regulating prices of air carriers

through the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), which

includes air ambulance providers such as Air Methods.[1] Am. Compl. ¶¶ 1-4.

Specifically, the Court stated in its prior order dismissing the initial Complaint that:

"Air Methods has alleged no harm from the requirement that insurers provide air-

ambulance coverage. And how could it? It is surely no worse off with insurers forced

to cover its services than with insurers who may or may not cover its services." Order

Granting Motion to Dismiss at 4 [ECF No. 30] (hereinafter, "Order").  The Amended

Complaint now explains how HB 747 harms Air Methods.  It is not simply an issue

of whether an insurer will cover Air Methods' services.  Rather, the harm is reflected

in the significant decline in the value of reimbursements that Air Methods has

---

[1]  See Defendant's Motion at pp. 2-3, quoting HB 747 that the "reasonable reimbursement" to be determined by private insurers is defined to specifically exclude "the amount of billed charges for the cost of services rendered."  Thus, as alleged in the Amended Complaint, there can be little doubt that under HB 747, insurers are lowering the prices charged by air ambulance providers and instead calculating lower prices based upon the direction of Florida state law in HB 747. Am. Compl., ¶¶ 43-45, 54.

received since HB 747's enactment, and which will likely continue.  Am. Compl. ¶¶

49-53.

Despite this clear explanation of how Air Methods is harmed, the head of the

state agency specifically directed by HB 747 to implement and enforce the new law,

Defendant Commissioner Altmaier of the Florida Office of Insurance Regulation

("OIR"), now claims that OIR's delay in implementation of HB 747 means that Air

Methods lacks standing to challenge the clearly unconstitutional and now damaging

acts of the State of Florida.  Federal standing analysis was never developed by the

federal courts to thwart review of such an unconstitutional law specifically directed

at, and that is financially damaging to, a particular industry that is engaged in

interstate commerce and provides life-saving medical care to patients requiring

emergency assistance.

## ARGUMENT[2]

### I.    Air Methods Has Sufficiently Alleged Injury-in-Fact

As referenced in the Motion and the Court's prior Order, a plaintiff must show

Article III standing by sufficiently alleging (1) an injury in fact that (2) is fairly

traceable to the challenged action of the defendant and (3) is likely to be redressed

---

[2] To the extent required for additional background explaining ADA preemption of
state laws seeking to affect prices of air carriers, and to avoid repetition in the record,
Plaintiffs incorporate herein Section I of its Response to Defendant's Motion to
Dismiss at pp. 1 to 5 of ECF No. 15.

by a favorable decision. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). Importantly, at the pleading stage of a case, a plaintiff need only present "general factual allegations of injury." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (*en banc*) (citing *Lujan*, 504 U.S. at 561).

Here, the Amended Complaint presents rather specific, non-conclusory factual allegations of injury through reduced insurer payments since the enactment of HB 747 and its (i) direction to insurers to determine a "reasonable reimbursement" that excludes the billed charges, and (ii) prohibition of balance billing. Am. Compl. ¶¶ 49-53 (reduction in reimbursements); ¶ 39 (Air Methods must balance bill in some instances to appeal insurer low initial reimbursements). These allegations of economic injury from both the reasonable reimbursement provision and the balance billing provision show sufficient concrete harm to meet the first element of the standing test at the pleading stage. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019).

For standing purposes, Air Methods need only demonstrate that the new law accounts for some of its injury or aggravates it - either of which is evident here. *See Florida v. Xavier Becerra,* No. 21-cv-839-SDM-AAS, 2021 WL 2514138 (M.D. Fla. June 18, 2021) (citations omitted) (accepting State of Florida's similar argument to demonstrate injury-in-fact for standing purposes). Additionally, where, as here, the law regulates a third-party (i.e., insurers), Air Methods may still establish

4

standing based on the effect HB 747 has on its operations and revenues. *See id.* (citing *Wilderness Soc. v. Griles*, 824 F.2d 4 (D.C. Cir. 1987); *Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("[I]f the injury complained of is the result of independent action of some third party not before the court . . . that does not exclude injury produced by determinative or coercive effect upon the action of someone else."); *see also Lewis v. Governor of Alabama,* 896 F.3d 1282 (11th Cir. 2018) (holding that an "indirect" injury can qualify as "fairly traceable").

## II.   Defendant's Concession That It Could Enforce HB 747 Shows Sufficient Standing at the Motion to Dismiss Stage and Establishes Traceability and Redressability

Turning to the traceability and redressability prongs of the standing test, again noting that this case is at the pleading stage, it is important to recognize that Defendant OIR concedes in its Motion that it has the legal authority to enforce HB 747, but has just not done so yet, stating that "the Commissioner has not begun enforcing HB 747." Motion at 9. This concession should eliminate any doubt that Air Methods sued the proper party to stop the harm it is experiencing from the unconstitutional enactment of HB 747. Indeed, the House of Representatives Staff Final Bill Analysis for HB 747 confirms that "In Florida, the Office of Insurance Regulation (OIR) is responsible for all activities concerning insurers and other risk bearing entities, including licensing, rates, policy forms, market conduct, claims,

issuance of certificates of authority, solvency, viatical settlements, premium financing, and administrative supervision, as provided under the insurance code."[3]

As referenced above, at the motion to dismiss stage, Air Methods is not required to *prove* traceability and redressability, but only allege an inference of standing. *Debernardis*, 942 F.3d at 1088. ("We conclude that the plaintiffs' economic losses were fairly traceable to Europa's conduct because their factual allegations support an inference that Europa distributed the supplements each plaintiff purchased."); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("Causation and redressability typically overlap as two sides of a causation coin" because "if a government action causes an injury, enjoining the action usually will redress the injury.").

Even if the Court presently has doubts as to whether Air Methods can ultimately prove standing, at a minimum, Air Methods should be entitled to proceed through the discovery phase of this action. Following discovery from Defendant regarding their alleged non-enforcement of HB 747, and also discovery from relevant non-parties (e.g., the health insurers), to confirm the basis of their reduction

---

[3] *See* House of Representatives Staff Final Bill Analysis for HB 747 (2020) ("House Analysis"), at 4, attached as Exhibit A, and available at *https://www.myfloridahouse.gov/Sections/Documents/loaddoc.aspx?FileName=h0 747z1.HMR.DOCX&DocumentType=Analysis&BillNumber=0747&Session=2020*

#85041321_v2

in payments to Air Methods under the authority of HB 747, Air Methods will have to support standing with evidence at the summary judgment stage of this action.

OIR erroneously asserts that because it has not yet implemented HB 747—a law enacted nine months ago—Air Methods cannot now sufficiently allege traceability of the effect of HB 747 to support standing.  HB 747's rate setting scheme constrains air ambulance operators' ability to seek full reimbursement for its services and thus plainly causes injury to Air Methods.  The Amended Complaint of Air Methods has sufficiently alleged the traceability of the harm to AMC as follows: 1) the State of Florida enacted HB 747 in violation of the U.S. Constitution and the Supremacy Clause because the ADA preempts the state law (Am. Compl., ¶¶ 1-7, 58-68); 2) following enactment, insurers have reduced payments to AMC, apparently in reliance on the enactment of HB 747, thus causing AMC monetary harm (Am. Compl., ¶¶ 48-56); and 3) HB 747 granted OIR the statutory authority to enforce the law, *see* Fla. Stat. § 20.121(3)(a), which OIR now concedes it has, but has chosen to wait to do so (Am. Compl., ¶¶ 8, 20-22, 47; *see also* Motion at 9). Redressability has been sufficiently plead because if the Court grants Air Methods the requested relief that HB 747 is ruled unconstitutional and therefore void, the harm to Air Methods is redressed because insurers can no longer use HB 747's "reasonable reimbursement" directive as cover to reduce payment of Air Methods'

prices.  Am. Compl., ¶¶ 38-39, 46-50.  In addition, the harm to Air Methods from HB 747's balance billing prohibition will also be redressed.

Even if OIR did not concede that it is simply waiting to enforce HB 747 despite its enactment some nine months ago, its authority over insurance regulation is repeatedly supported by the Florida Legislature as expressed in the Florida Statutes.  *See Allstate Floridian Ins. Co. v. Office of Ins. Regulation*, 981 So.2d 617, 622-23 (Fla. 1st[t] DCA 2008) (such statutes include: Fla. Stat. § 624.301(1) (mandating OIR enforce the Insurance Code), Fla. Stat. § 624.11(1) (any person transacting insurance in the State must comply with the insurance code), Fla. Stat. § 627.031(2) (mandating that if OIR has reason to believe any person has violated or is violating a provision in the code, OIR shall conduct an investigation), Fla. Stat. § 624.318(2) (every person subject to an investigation must make its officers, employees, attorneys and others available to OIR), Fla. Stat. § 624.321(1)(b) (giving OIR subpoena power to conduct investigations), Fla. Stat. § 624.418(2)(a)-(b) (giving OIR the authority to suspend or revoke the certificate of authority of an insurer for violations of the code)).

Finally, the decisions of the Eleventh Circuit Court of Appeals in inapposite, non-economic harm cases that do not involve federal preemption should not be followed here.  The entire purpose of HB 747, as admitted by Defendant, is to reduce payments to air ambulance operations from "high cost" to a so-called "reasonable

reimbursement." The Florida legislators expressly acknowledged that this law would have a "negative, indeterminate fiscal impact" on air ambulance service providers.[4] These undisputed facts alone are sufficient to support Air Methods' standing to challenge HB 747 as preempted by the ADA because of the obvious injury these reductions cause to Air Methods by enforcement of the statute by the Defendant.

## III.   OIR Fails to Recognize the Legal Significance of the Non-Severability Clause

With regard to the important interplay between the two provisions of HB 747 (reasonable reimbursements set by insurers that set air ambulance operators' prices and the prohibition on balance billing that reduces air ambulances operators' prices), Defendant's Motion completely ignores the non-severability provision in HB 747, which states:

> Section 5. If any provision of section 627.42397, Florida 87 Statutes, or section 641.514, Florida Statutes, as created by this act, is determined to be invalid or inoperative for any reason, the remaining provisions thereof shall be deemed to be void and of no effect. To this end, the Legislature declares that it would not have enacted any of the provisions of section 627.42397, Florida Statutes, or section 641.514, Florida Statutes, individually and expressly finds them not to be 94 severable.

The Florida Legislature clearly stated in HB 747 that the reasonable reimbursement and balance billing provisions in the new law are not enacted

---

[4] *See* House Analysis, at 6, attached as Exhibit A.

"individually" and "expressly finds them not to be severable." Fla. Stat. § 627.42397, note 1, citing Section 5, ch. 2020-177. This means that a finding of unconstitutionality of one provision (i.e., the "reasonable reimbursement" provision) results in the invalidity of the remainder of the law (i.e., the "balance billing" provision). When such clauses are included, as here with HB 747, courts "should adhere to the text of the nonseverability clause" and "hew closely to [it]." *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020).

OIR dismisses the importance of the express non-severability clause by relying on *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332 (2006).[5] While *Daimler-Chrysler* does stand for the proposition that a plaintiff must have standing for each claim, that case involved two different statutes (tax impositions) that had little to do with one another (a municipal property tax exemption and a franchise tax). 547 U.S. at 338. And, importantly, it was a taxpayer standing case, not a federal preemption case involving a clearly preempted state law. *Id.* at 343-344. Taxpayer standing has always been difficult to obtain absent very specific circumstances, and, there is no

---

[5] Air Methods notes that the *Daimler-Chrysler* case was raised for the first time at the hearing on OIR's motion to dismiss the initial complaint, and was not raised in any of OIR's briefing prior to that hearing. Although the Court relied upon *Daimler-Chrysler* in its Order, Air Methods respectfully requests that the Court take a fresh look at the critical distinction between the *different tax ordinances* challenged in *Daimer-Chrysler* versus the express non-severability clause in HB 747, the only statute challenged in this action.

dispute that having standing to challenge one tax does not grant standing to challenge a different tax.

In sharp contrast here, Air Methods brings a *single preemption claim* against one statute that has two parts that are explicitly not severable under state law.  As alleged in the Amended Complaint, Air Methods is injured by both the reasonable reimbursement provision and the balance billing provision, and by the combination of both provisions enacted in violation of the US Constitution.

In the present case, the Court should adhere to the text of the non-severability clause. The inclusion of a severability or non-severability clause leaves no doubt about what the enacting legislature wanted if one provision of the law were later declared unconstitutional. A severability clause indicates "that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987); *see also I.N.S. v. Chadha*, 462 U.S. 919, 932 (1983).  A non-severability clause does the opposite – courts must follow the legislative mandate to strike down the entire law.

Moreover, *Zobel v. Williams*, 457 U.S. 55 (1982), referenced by the Court in its Order, does not stand for the proposition that this Court is unable to determine whether a state statute that includes a non-severability provision is unconstitutional—that is exactly what the U.S. Supreme Court did in *Zobel*, a case

11

involving a constitutional challenge to the Alaska oil dividend distribution scheme that treated Alaska residents differently based solely on how long they have lived in the state. The Supreme Court struck down the statute and the non-severability clause was not an issue in the case. 457 U.S. at 65. Toward the end of the opinion, the Court declined to address a hypothetical about whether the State could enact the dividend program prospectively only, referencing the non-severability clause for the first time at that point and suggesting in dicta that the Alaska courts could address that issue. *Id.* The *Zobel* decision, rather than removing the power of this Court to ignore the explicit state law non-severability provision, actually teaches that this Court must enforce the non-severability provision and supports the authority of this Court to strike down both provisions of HB 747 as unconstitutional. *Zobel* states that "[i]nvalidation of a portion of a statute does not necessarily render the whole invalid *unless it is evident that the legislature would not have enacted the legislation without the invalid portion*." *Id.* (emphasis added). As quoted above, the Florida Legislature has already made clear that the reasonable reimbursement provision and the balance billing provision in HB 747 would not have been enacted without the other.

## IV. The No Surprises Act Preempts HB 747 Now and Following Its Effective Date

Count II of Air Methods' Complaint alleges that HB 747 violates the Supremacy Clause because it is in conflict with several federal laws enacted in the

aviation field, and specifically the air ambulance field, including the ADA, FAA Reauthorization Act[6] and No Surprises Act. The foregoing laws all demonstrate Congress' intent to prevent States from enacting and enforcing laws that seek to regulate the air ambulance industry's rates. The latter two laws, in fact, were enacted to expressly confront at the federal level various States' attempts to regulate air ambulance pricing through State laws, which is expressly forbidden by the ADA. *See, e.g.,* FAA Reauthorization Act, § 418(d) (directing the Air Ambulance and Patient Billing Advisory Committee to develop recommendations on actions States may take in the air ambulance billing context without offending the limits imposed by the ADA and DOT's consumer protection authority); Consolidated Appropriations Act, 2021, Pub L. No. 116-260, 134 Stat. 1182 (2020), Div. BB, Title I §§ 105-106 (containing sections specifically targeted to air ambulance providers' billing practices and requiring cost reports to Secretaries of HHS and DOT). There can be no doubt that HB 747 interferes with the accomplishment of Congressional objectives in this area, particularly as federal regulations providing guidance on the No Surprises Act are forthcoming. Federal oversight here is clear, necessary and undisputed.

The fact the No Surprises Act does not take effect until January 1, 2022 does not preclude a finding that HB 747 conflicts with the new law and is field preempted

---

[6] Pub. L. No. 115-254, 132 Stat. 3186 (2018).

as well by the substantive federal laws in this area.[7]  Air Methods has experienced economic injury since HB 747 was enacted and will continue to do so.  Deciding the issue now is consistent with the purpose of a declaratory judgment action, which is to address a substantial, immediate controversy between parties with adverse legal interests. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).  Waiting until the federal law takes effect (or until the State decides to enforce the Florida law) is simply prolonging a resolution of the dispute and leads to additional unnecessary harm to Air Methods.

Moreover, OIR mistakenly asserts that the No Surprises Act may incorporate HB 747 into the calculation of out-of-network air ambulance rates. ECF No. 36 at 13, n.9.  Section 2799A-2(a) requires a payment at the "out-of-network rate" for "air ambulance services," which are then defined in § 2799A-2(c)(1) as "medical transport by helicopter or airplane for patients."[8]  While § 2799A-2(a) provides, *inter alia*, that plans pay air ambulance providers a total payment equal to the "out-of-

---

[7] See *Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 367 (3d Cir. 1999) (noting that field preemption allows courts to infer a congressional intent to preempt state law "where federal regulation of a field is pervasive, or where state regulation of the field would interfere with Congressional objectives"); *Carvajal v. Am. Airlines*, No. 10-CV-23269-WMH, 2011 WL 13273367 (S.D. Fla. Nov. 10, 2011) (finding implied preemption where clams fell within federally regulated safety areas).

[8] Congress chose to add a new definition for "air ambulance services" only applicable within Section 105, which also makes it impossible for the term "specified State law" to even be relevant.

network rate" as defined in Sec. 2799A-1(a)(3)(K), this definition's reference to a "specified State law" does not apply to air ambulance services.  The term "specified State law" is defined in Sec. 2799A-1(a)(3)(I) as "a State law that provides a method for determining the total amount payable" for an "item or service" furnished by "a nonparticipating provider or nonparticipating emergency facility."[9] This definition, however, does not encompass "air ambulance services" (a separately defined term in Section 105) provided by air ambulance service providers – only items and services furnished by nonparticipating providers and nonparticipating emergency facilities.  Accordingly, there is necessarily no "specified State law" that could apply to an air ambulance provider.  The only amount that could be deemed the "out-of-network rate" is therefore either: (a) the amount agreed upon through open negotiations; or (b) the amount determined in the IDR process.

Additionally, to the extent that an insurer relies on HB 747 for calculating the payment for out-of-network services, they would be violating the ADA because HB 747 plainly regulates pricing with its reasonable reimbursement rate setting provision. HB 747 further lacks an arbitration or dispute resolution process and would therefore undermine the No Surprises Act if it was followed. Commentaries on the No Surprises Act recognize that states cannot enact laws that regulate prices

---

[9] The term "nonparticipating provider" is defined in Sec. 2799A-1(a)(3)(G) as "a physician or other health care provider who is acting within the scope of practice of that provider's license or certification . . ."

of air ambulance providers. *See, e.g., Georgetown University Health Policy, The No Surprises Act and Preemption of State Balance Billing Protections,* at 3 (recognizing that while states can enforce federal law, they cannot enact their own laws to broadly regulate air ambulance prices, routes or services).[10]   In enacting the No Surprises Act, Congress was fully aware of the unique circumstances of air ambulance service providers and the ADA's role in expressly preempting state laws that set rates.   In sum, there is no incorporation of HB 747 into the federal law – it is preempted, plain and simple.

### CONCLUSION

The Court should deny Defendant's motion to dismiss in all respects.

June 23, 2021                                     Respectfully submitted,

HOLLAND & KNIGHT LLP

*Attorneys for Plaintiffs*

/s/ Tiffany A. Roddenberry
Tiffany A. Roddenberry
Florida Bar No.  92524
Email:  Tiffany.Roddenberry@hklaw.com
315 South Calhoun Street, Suite 600
Tallahassee, FL 32301
Tel:   (850) 224-7000

---

[10] Available at https://surprisemedicalbills.chir.georgetown.edu/wp-content/uploads/Preemption-and-No-Surprises-Act_April-2021.pdf

16

- and -

Judith R. Nemsick
Email:  judy.nemsick@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200

- and -

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email: phil.rothschild@hklaw.com
515 East Las Olas Boulevard, 12th Floor
Fort Lauderdale, FL 33302-4070
Tel:   (954) 525-1000

17

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C), and that the foregoing complies with the word limit in Local Rule 7.1(F); this response contains 3,277 words, excluding the case style, signature block, and certificates.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to  all counsel of record through the Court's CM/ECF system on June 23,  2021.

*s/ Philip E. Rothschild*

## SERVICE LIST

William H. Stafford III
Senior Assistant Attorney General
Florida Bar No. 70394
Elizabeth Teegen
Chief Assistant Attorney General
Florida Bar No. 833247
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Tel: 850-414-3300
william.stafford@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com

#85041321_v2