IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**AIR METHODS CORPORATION and**
**ROCKY MOUNTAIN HOLDINGS LLC,**

    **Plaintiffs,**

v.                                                      Case No. 4:20-cv-462-AW-MAF

**DAVID ALTMAIER, in his official**
**capacity as Commissioner of the Office of**
**Insurance Regulation,**

    **Defendant.**

_____/

## **FINAL ORDER OF DISMISSAL**

A new Florida law requires that "[a] health insurance policy must require a health insurer to provide reasonable reimbursement to an air ambulance service." Ch. 2020-177, Laws of Fla. §§ 1, 2.[1] The law also forbids balance billing—that is, it forbids air-ambulance services from seeking additional payment from one whose insurer made "reasonable reimbursement." Fla. Stat. § 627.42397(2). Plaintiff Air Methods Corporation, an air-ambulance company, sued to enjoin the law's enforcement.[2] It contends the Airline Deregulation Act of 1978 and the No Surprises

---

[1] Sections 1 and 2 are substantially identical, except that one deals with health insurance policies and the other with HMOs. They create Florida Statutes § 627.42397 (for health insurers) and § 641.514 (for HMOs). For simplicity, this order will treat the two provisions as one but cite to § 627.42397.

[2] Air Methods operates through its wholly owned subsidiary, Rocky Mountain Holdings LLC, which is also a plaintiff. FAC ¶ 16. This order refers to the two plaintiffs collectively as "Air Methods."

1

Act conflict with and preempt Florida's new law. ECF No. 33 ("FAC"). The sole defendant is David Altmaier, sued in his official capacity as the Commissioner of the Office of Insurance Regulation. FAC ¶ 19.

I granted the Commissioner's earlier motion to dismiss, but I gave Air Methods leave to amend. *See* ECF No. 30. Air Methods responded with an amended complaint, ECF No. 33, and the Commissioner has again moved to dismiss, ECF No. 36. I have considered the motion, Air Methods' response (ECF No. 39), and the parties' notices of supplemental authority and responses. *See* ECF Nos. 40-43.

As before, I must ensure that there is subject-matter jurisdiction before turning to the merits. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). The court lacks subject-matter jurisdiction if Air Methods lacks standing. And to have standing, Air Methods must have "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). As the plaintiff, Air Methods has the burden to establish standing, and at this stage, it must have alleged facts to support standing. *Lujan*, 504 U.S. at 561. I concluded earlier that it had not done so, and having carefully reviewed the amended complaint, I conclude Air Methods still has not done so.

Air Methods alleges that "[s]ince enforcement of HB 747, [it] has sustained significant economic losses." FAC ¶ 49. In support, Air Methods alleges that the

average amount received from first primary payments for CIGNA dropped in the six months after HB 747 took effect. *Id.* ¶ 50. For purposes of this motion, I will accept that Air Methods has alleged a financial loss constituting an injury-in-fact. But Air Methods still must show traceability and redressability. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019). "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc). And it needs to do so with more than mere conclusory statements. *Id.* at 924-25.

Despite its new factual allegations, Air Methods still has not alleged traceability or redressability, elements that typically "overlap as two sides of a causation coin." *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997).

In my earlier order, I noted that the alleged harm did not come from the requirement that insurance policies cover (at least in part) air-ambulance services. ECF No. 30 at 4. That is still the case. Even if I enjoined the Commissioner from *requiring* insurers to include this coverage, insurers could still do so.[3] They could

---

[3] As the Supreme Court explained in *Lujan*, when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else* . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction." *Lujan*,

also omit air-ambulance coverage altogether, which would surely not remedy Air Methods' injury. All the law does in this respect is obligate insurers to include certain minimum coverage they would otherwise be free to omit.

Moreover, any suggestion that insurers would offer more without the minimum-coverage requirement is purely speculative. Air Methods alleges that "[u]pon information and belief, this reduction [in insurer payments] was caused by HB 747 affording the insurer discretion to pay what the insurer alone considered a 'reasonable reimbursement.'" FAC ¶ 50. But it does not allege specific facts to support this. Although Air Methods relies on *Bennett v. Spear* to argue that the Commissioner's regulation affects insurers' offers, there are no allegations to show the Commissioner's actions (or threatened actions) "in reality ha[d] a powerful coercive effect" on the third-party agency, as was the case in *Bennett*. 520 U.S. 154, 169 (1997).

Air Methods complains that the new law affords "insurer[s] *carte blanche* in setting the reimbursement rate" or "wholesale authority to decide the rate for ambulance services," FAC ¶¶ 44-46, but the reality is that there are no set rates. With or without the challenged law, insurers had no obligation to meet Air Methods' payment demands. As to the required-coverage or "reasonable reimbursement"

---

504 U.S. at 562 (internal quotations omitted). As a result, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.*

4

provision, Air Methods primarily takes issue with the law's mere existence rather than any action (or threatened action) traceable to the Commissioner.[4] *Cf. Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1203 (11th Cir. 2021). Thus, it has not demonstrated standing to challenge that provision.

As before, Air Methods' real issue is with the no-balance-billing provision. The amended complaint includes a concrete example. It points to services it provided in October 2020, for which it billed some $46,000. FAC ¶ 52. The insurer paid less than $12,000, leaving a balance of approximately $34,000. *Id.* The no-balance-billing provision kept Air Methods from recovering that balance from the insured. This is, to be sure, an injury. But not one redressable here.

It remains the case that the Commissioner does not enforce this provision. So there is nothing to enjoin him from as to this part. And regardless of what happens in this case, the insured (in any subsequent suit) could assert the no-balance-billing provision as a defense, and the preemption issue would have to be litigated all over again. No state-court judge would have to go along with what I decided here. *See Lewis*, 944 F.3d at 1303. Indeed, a suit between a provider and an insured is where the validity of the no-balance-billing provision ought to be decided. As I noted

---

[4] I agree with Air Methods that the Commissioner's insistence that the law has yet to be enforced, *see* ECF No. 36 at 9, does not preclude relief. I have therefore not considered the declaration submitted by John Reilly. ECF No. 36-1.

earlier, in *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259 (11th Cir. 2018)—a case Air Methods relies on—the underlying litigation was between balance-billed patients and air-ambulance providers. *Id.* at 1263; *cf. also Lewis*, 944 F.3d at 1301 ("Plaintiffs could have sued their employers, who refused to pay the ordinance-prescribed $10.10 wage—and thereby (and perhaps most obviously) caused their injury.").

The situation here is not among the limited circumstances in which "it is substantially likely as a practical matter that non-parties would abide by an authoritative interpretation of the law, even if such parties would not be directly bound by such a determination." *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1252 (11th Cir. 2021) (cleaned up). There is no reason to think that an insured seeking the benefit of the no-balance-billing provision would abandon its defense based on an order from this case. In short, the injunction Air Methods seeks—enjoining the Commissioner's enforcement—would not redress their injury. *Cf. Jacobson*, 974 F.3d at 1253; *Support Working Animals*, 8 F.4th at 1205 ("Even if we were to issue a decision in the plaintiffs' favor, [the challenged law] would remain on the books, the plaintiffs' businesses would remain illegal, and they would remain in the same position they were in when they filed the operative complaint.").

Last, the statute's nonseverability clause does not save Air Methods' claim. In Air Methods' view, if one part of the law falls, the other part falls too. This may

be so as a matter of state law, but it does not help Air Methods with traceability or redressability. Air Methods still has to show standing as to one provision or the other, and it has not. And even if it had shown standing as to one provision, the remedy would be to enjoin enforcement of that provision. *Cf. Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring) ("Invalidating a statute is not a 'remedy,' like an injunction, a declaration, or damages. Remedies operate with respect to specific parties, not on legal rules in the abstract." (citation and marks omitted)); *California v. Texas*, 141 S. Ct. 2104, 2115 (2021); *Jacobson*, 974 F.3d at 1255 ("[F]ederal courts have no authority to erase a duly enacted law from the statute books. Our power is more limited: we may enjoin executive officials from taking steps to enforce a statute." (marks and citation omitted) (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018)).

In sum, Air Methods has not alleged facts to show traceability or redressability. The Commissioner's motion to dismiss (ECF No. 36) is therefore GRANTED. The clerk will enter judgment that says, "This case was resolved on a motion to dismiss. Plaintiffs' claims are dismissed without prejudice based on lack of subject-matter jurisdiction." The clerk will then close the file.

SO ORDERED on October 12, 2021.

                                        s/ *Allen Winsor*
                                        United States District Judge